I am Mike Schwartzkopf. I represent the appellant, Reno Paul. I come here because, in this case, the district court has ruled in three distinct areas of our original complaint and in our amended complaint that those causes, or groups of causes, should be dismissed. The first of those is a set of RICO causes. And the suggestion was made at the district court that none of the alleged RICO predicate acts, and those are the acts listed at paragraphs 88 through 108 of the amended complaint, which are at excerpts of record starting at 115, are in fact predicate acts considered a criminal activity and indictable under RICO. It also went on to say that even if those alleged predicate acts are predicate acts, there is not a sufficient pattern under RICO to be considered a pattern of racketeering activity. Our contention is that these contentions of the district court are just flat wrong as a matter of law. The basis of our RICO claims arise out of 29 U.S.C. 186 A and B. I didn't see any mention of those sections in the district court's decision. Did the district court consider those sections? I can't say, Your Honor, that I recall specifically them citing to those particular sections, but I can say to you that the court was fully apprised in the amended case. Well, no, I understand it was apprised. I wondered whether it considered it in its decision, whether it considered sections 186. My belief is it gave it short, if any, consideration. The magistrate's ruling made a passing 8 or 9 word mention of the 186 claims. The magistrate's initial ruling was a recommendation in order, spent all of his time on the fraud allegations, which were at that point in time concededly underpled allegations, but nearly ignored the 186 allegations. When the complaint was amended, before answer was filed, and still no answer was filed, the district judge himself then reviewed the report and recommendation of the magistrate and gave what I think was fairly short shrift in a conclusory fashion, simply concluded that the 186 A and B allegations, as pled, do not as a matter of law amount to predicate acts. That contention, and I believe that contention is made at page 187, I'm sorry, 178 of the excerpts of record, that contention is frankly confusing to me because on its face 186 talks about what Congress has determined is a defined limit to what may be exchanged, what things of value may be exchanged between labor and management representatives, and has listed the specific exceptions to the exchange of any value. And of course 186 arose out of the concerns that existed in the 1950s in particular and really is tied in an overall environmental fashion to this entire underpinning of RICO to begin with. So that our point is that all of the alleged activities in our complaint, at paragraphs 88 through 108 of the amended complaint, do in fact raise the specter in some specificity of improper exchanges of things of value and promises of exchange in the context of the initiation or the origination or creation of these what we call phony unions. They arise in the context of, in one case, of a decertification of a union, a legitimate union at a site in Washington. And they arise, and whereas the first thing we discovered leading to the filing of the complaint, they arise because the phony unions and WNCO have negotiated in their contracts a provision that allows or requires the indemnification by WNCO of representatives of employees, the union, for any liability those representatives of the employees might face on account of their failure to properly process grievances. On its face, that is anathema to the law that is represented in 29-186. It is absolutely foreign to the principle of arm's length dealings between labor and management. Out of all of those things, the initiation of these unions, the promotion of the unions, the way in which the contracts were negotiated, in which things of values were promised before recognition was even granted, out of those things, out of the method of the decertification, which was similar, and out of the negotiation of these indemnity clauses, which not only are problematic because they were negotiated, but because indemnity means that there is an ongoing life to the promise to indemnify that is raised in a pattern sense every time the prospect of filing a grievance or an inquiry on behalf of an employee is raised. So we're frankly, the court does not give much direction as to why these things are not sufficient predicate acts. As to the issue of whether, if we can surmount that, the issue then arises where the court indicated it thought that there wasn't a sufficient pattern. Well, we have laid out at great length in our amended complaint that we believe that the pattern, the relatedness of these acts has to do with the concoction, the scheme arrived at at WNCO's largely at their behest that is meant to control the ownership of the company, because there is an employee stock ownership plan as to which employees are either eligible or potentially eligible because they work at the company. It is also a plan to, in order to control that ownership of the company, they rely upon a great deal of turnover in this retail grocery business, turnover that is fostered by the lack of the existence of an arm's length union in the relationship between labor and management. The purpose is, frankly, to, as is seen in the grievance procedure, to send all the devils of employee disputes or potential disputes into the grievance procedure, take them all out of the judiciary, keep real unions away by the contract bar doctrine of the National Labor Relations Act, because real unions can't come in but in very defined moments and only upon the expiration of contract and other National Labor Relations Act annual bars. And so that the purpose of this thing, the purpose of this, the way all of these racketeering acts relate is to contain, suppress, keep the wages and benefits down that could be gathered from a real union, suppress that, maintain control over the ownership and who the employees are, keep the employee ownership limited by not having any effective representation in termination proceedings such as happened to the appellant in this case, and on we go. We think there is sufficient, more than sufficient, education of a pattern. Let me just brush over the other portion of, or two portions of this case that were dismissed. The first is, of the remaining two, is the idea that the state causes of action, the one in particular that is at issue here is the one filed alleging the complicity of WNCO, the state action for breach of fiduciary duty to which WNCO, we allege, is complicit. The district court ruled that because it believes those allegations of breach of fiduciary duty are subsumed by the jurisdiction of the National Labor Relations Act, and or the jurisdiction of the federal courts, that there is no jurisdiction left in state court, in essence state court jurisdiction, and state court law is preempted. Let's suppose that you could get past the question of preemption here. What fiduciary duty does WNCO owe to its employees? As the case is now pled, WNCO owes no fiduciary duty to its employees. The point in bringing the action and appealing it is simply that we believe under the restatement second of torts that a party who knows, who acts in concert with one who has a fiduciary duty, knowing that that duty exists and knowing that that duty is not being met is equally liable. That's probably a poor paraphrase of what the restatement second says, but that's the essence of it. And so our point obviously is, and the other half of that, of course, is we want to be able to sue the unions on that state basis, too. But doesn't that completely undermine, doesn't that mean that then the doctrine of conspiracy would completely undermine the doctrine of fiduciary duty? That suggests that you can bring within this net all kinds of people who are liable for breaching a fiduciary duty who never did owe a fiduciary duty. That seems to sort of swallow the whole doctrine, doesn't it? Well, it does if it's phrased that way. But our point is, the critical component of that is there is a fiduciary duty. I don't think it's ever been. In fact, you told me that WNCO didn't owe a fiduciary duty to its employees. Okay. Let me try to be more clear then. There is an underlying fiduciary duty owed by the people that WNCO set up to essentially take the fall to be the phony unions. Those folks, because they are unions in some sense, owe the duty. The conspiracy portion of it I think you're talking about and the complicity portion that I'm talking about, I will grant you, does not exist unless there is truly a duty in the first place. And I think that's the exception to the hypothetical. You're arguing that because WNCO set up the phony unions and the unions would owe a fiduciary duty to the employees, that WNCO has in some way reached some duty that the unions would have owed if they had really been unions? Yes. Yes. I mean, to put these, many of these. That still doesn't create a fiduciary duty in WNCO, does it? Well, I. And you have other causes of action that will get at the problem. If WNCO has in fact set up phony unions, you've got your RICO action or you have other allegations that might cover that. But very difficult for you to say, isn't it, that you've got a fiduciary duty when you admit that you don't have a fiduciary duty. Well, clearly with the difficulty that I've had with the RICO allegation, I'm not comfortable to concede that. But I wouldn't concede it anyway, Your Honor, because I think there are separate causes of action. And I think the restatement second of torts in the common law, the restatement that is in fact recognized by Idaho, that the restatement second of torts fills in that basis that you're looking for there. I think it says essentially that those who are complicit with people who have a fiduciary duty and who know that that duty is being breached are equally liable for the breach. Again, maybe a poor paraphrase, but I think that is a true essence of what the restatement is. Now, the district court didn't reach that question because it simply held this was preempted? Or am I mistaken about that? It is not clear to me whether district court made a distinction between preemption in a primary jurisdiction sense or preemption in a State law preemption sense. Upon rereading it the answer to Judge Fletcher's question as to whether they decided the question of whether there's a fiduciary duty or whether you fail to state a claim was, as Judge Fletcher asked, did they reach that or did they simply decide on preemption? I started talking before I listened to your question. I'm sorry, Your Honor. The answer to that is no, the district court did not. Assuming for purposes of argument that this State law claim is not preempted, did the district court judge rule on whether or not you stated a good claim under State law? No. That's what I thought. No. No. Not at all. And let me brush to the third item. We also filed a Section 1981 claim that was part of the amended complaint. The court, again, in a way that is frankly confusing for me to reconcile, not easy for me to reconcile, the court acknowledges my argument that 411A4 of the Labor Management Reporting and Disclosure Act forbids a union from waiving the right of one of its members to initiate litigation, to litigate. The court acknowledges that the text of that statute, as I read it, is correct. It went on to say, however, that that does not mean that a union member himself, in this case, Paul, my client, could not himself waive such a right to litigate. And the court decided that I had, I guess, waived for him that right to litigate. I have not been able to, again, it makes reference to the transcript of hearings. It makes reference, I think, at some point potentially to a brief I wrote. Unless I have completely missed everything, I can find no point in the record where I have acknowledged to anyone that we have waived our 1981 rights. And it is where the allegations of phony unions exist. I would urge this Court to be reluctant to uphold the dismissal of 1981 claims based upon a grievance procedure that was not negotiated at arm's length. You have three minutes left. Would you like to save it for rebuttal? I will. Thank you. May it please the Court. Jeffrey T. Johnson of Holland and Hart on behalf of Defendants Appellees, the Winco Defendants. Could you explain the last issue first, maybe? How did the individual waive his right to sue? Well, I think, and I can't explain counsel's argument with respect to this waiver, but I think waivers of right to sue happen all the time in collective bargaining. Where was the waiver? How did the waiver occur? The employee associations agreed to a collective bargaining agreement that contains a not exceptional arbitration. I thought the judge said that the union couldn't waive it. Only the individual did. That was the argument that the plaintiff made below. We believe that unions can indeed waive the right to go to court. So the waiver is in entering into a collective bargaining agreement? Yes. It provides an arbitration clause? Yes, it does. And that you say waives the right to sue? That's correct. Okay. So that's the issue. That's nice and clear. We believe it's a clear and unmistakable waiver consistent with the waiver. Does it say anything about you may not ever challenge the arbitration clause? You may not sue or? Oh, no. Oh, no. Nothing of the sort. It's a pretty standard provision, an arbitration provision from a collective bargaining agreement that says all disputes arising here under, including specifically statutory discrimination claims, have to be brought in arbitration. That's the nature of the waiver. Okay. On the second question that Judge Fletcher asked, did the judge do anything with the state court claim other than say it's preempted? No, Your Honor. The district court's decision turned on the preemption argument, which we believe is a fairly straightforward and easy question under Baca and Rawson. The union's duty of fair representation is a matter of Federal law, not state breach of fiduciary duty or breach of agency duty question. It's a relatively straightforward and easy preemption analysis, and the district court was absolutely correct in its decision in that regard. If we were to disagree with that, and, of course, I don't ask you to concede, if we were to disagree with that, would the appropriate course to be to remand the district court to allow that court in the initial instance to decide the state law claim? I would think that it would have to be, Your Honor, because the court never breached is there such an animal under Idaho law of assisting a breach of fiduciary duty. So I think that that would have to be the appropriate response. I'd like to turn now to the RICO claims, which I believe are really the heart of this appeal, and specifically the issue of RICO standing. We addressed two other RICO issues in our brief. First, the Article III standing problem that plaintiff here bringing an individual claim has and does not have standing to argue about what may have happened at a different store or even harm that may have come to others at his own store. He has to complain about his own harm. We've raised those issues in our brief, and I believe we've dealt with them there. And secondly, the failure of a pattern of racketeering activity. Well, as I understand it, the claim, for whatever its merit may be, is that all the payments to the union officials constitute violations, that they're improper payments by a company of the union officials. Well, there is – there was an allegation added in the amended complaint after the case was – after we filed the first motion to dismiss. It had been – a recommendation had been made by the magistrate judge. But that allegation was added at the 11th hour in an attempt to save the complaint. Whatever it is, it's there. And why isn't that a valid RICO claim? Well, that may be a valid RICO claim if plaintiff can prove it. That may be a valid predicate act. But the difficulty is – and indeed, if he can – the problem is he has to not just allege the predicate act, but he has to allege appropriate RICO injury. And that's really the problem here. We haven't challenged whether the two predicate acts upon which plaintiff really relies, one, that the indemnification agreement that is in the collective bargaining agreement, they allege that that violates section 302 of the Labor Management Relations Act. We haven't challenged that. Similarly, we don't challenge the RICO predicate act that you allude to, Your Honor, the so-called bribery allegations, as I would characterize it. So those may be appropriate predicate acts. His problem is that they can't show that that was a RICO injury, or more importantly, that it caused a RICO injury. Now, do you mean something different by RICO injury than injury? What do you mean when you add that qualifier RICO? Well, in order to – certainly this Court has made clear that in order to have RICO standing, you have to have harm to your business or property. Harm to an intangible property interest is not sufficient. But as I understand the story, he says he was fired because the cash register showed 559 when he sold an alcoholic beverage that he was not able to sell until 6 o'clock, one minute later. And he says, yeah, but my supervisor said go ahead and sell it. He's fired. He then brings a grievance, and the grievance is denied. And as least I understand it, the guts of what he's saying is if I had had a proper union and a proper grievance procedure that was not influenced by these illegal payments, this whole allegation, I would have got an honest answer, which is to say my grievance would have been sustained. Why is that not damage? And that's indeed the problem here, because you have to have causation. Well, I just gave it to you. Why is that not causation? But the causation has to be more than just, well, this happened and this happened. It has to be an approximate cause. That's what he's saying. He's saying that he went before a union grievance committee, and they turned him down. And he said this was not an honest turn down. These were people who were paid and bought to do the company's will. Well, indeed, that's not the allegation here, because the allegation is there was an indemnification provision in the agreement, and the allegation is that there were bribes in establishing the employee association. Those are the two predicate acts that he alleges. The difficulty is that over here you have the RICO injury that he's alleged. One is that I would have regained my employment. At least that's what they now say. To say my grievance would have been sustained. That's right. Yes. Or, alternatively, trying to shoehorn themselves into Mendoza, they argue that if this would have suppressed these RICO, these predicate acts caused a suppression of my wages. Now, I don't know how you get from causation-wise here to here on that claim. Isn't that a triable issue of fact, the first one? That is to say, he's complaining, listen, there's such a relationship, an illegal relationship, between the company and the union that this grievance procedure committee is bogus. And because it's bogus, I got an answer that I would never have gotten had I been in front of a regular thing. And you're saying, but there's no causation. Well, isn't that a question of fact? Well. I mean, he alleges there's causation. You disagree. Well, but it's more than just a pleading issue. And I appreciate the thrust of the Court's question. But, and this comes up all of the time. It came up in the Supreme Court case of Homes versus Security Investors Protection Corporation. It came up in the Oregon Laborers case, which was a Ninth Circuit case from 1999. Get to my question, which is to say, he says there's causation. You say there's not. Well, but there has to be some direct proximate cause of one to the other. Well, he says there is. You say there's not. Well, entering, it's, the predicate act is not that somehow Winco entered into a, we have an employer-dominated or employer-interfered-with labor organization. Those are the preempted kinds of things that belong with the National Labor Relations Board, not before this Court. We have a very narrow RICO issue here. And the difficulty is that they can't show that that, he can't show that direct and proximate relationship. It's too remote. It's too specific. It simply does not follow. Let me see if I follow the argument. Let's assume that he's clearly alleged, and I think he's got enough in there to satisfy the pleading standard. Let's assume that he's clearly alleged the following. Okay. Illegal payments made by the company to the union. As a consequence of the illegal payments, the union and its grievance procedure is in the pocket of the company. It is not an honest organization. Because the grievance procedure is not a straightforward procedure because the grievance committee is in the pocket of the employer, I got a bum deal. That sounds like boom, boom, boom, straight causation. Are you telling me right there in the middle that the conclusion that he draws is, well, the relationship between the company and the union is a bogus relationship? He says we have no jurisdiction over that because that's under the federal labor laws, and, therefore, we have to take that part of the causal chain out of any RICO analysis? Is that your argument? It's not, Your Honor. He doesn't make that second allegation in the complaint. But this is Rule 8a, right? Well, the RICO Predicate Act that was alleged is that – and it's very vague, very conclusory. There's no detail whatsoever in the complaint. I repeat, this is Rule 8a, right? That's correct. But there still has to be enough to be able to see that there is a direct and proximate causal relationship between them, that it's not too remote, it's not too speculative. But all he has to do is allege it. He doesn't have to detail it. Well, but it still has to logically follow. And where there is simply an indemnification provision in a collective bargaining agreement, it does not necessarily follow that, therefore, he would have regained his employment, because that's the RICO interest. Well, I think that's where we are really at issue, and that is to say, I don't think he needs to show that it necessarily follows as a matter of logic. All he needs to show is that it's true as a matter of fact. And let's get down to business and try the facts. Well, I think it's – I think the standard is higher than simply a causation in fact standard. The Supreme Court and this Court have said, no, it has to be – it has to be – you have to show direct and proximate causation. No, no. What do you mean by direct and proximate causation instead of factual causation? I'm saying one, two, three. Start with one. You end up with three. That's causal. And you're saying it's not causal? You might not understand. Simply because you have – that there is an indemnification provision doesn't mean that he gets – he gets his job back, that one does not boom, boom, boom, lead to – lead to the last. I think I understand, although this is – and this is not a criticism. This is difficult stuff. Okay. I'm with you. Indeed. And that is the difficulty. It's the – it's the causal link between the two predicate acts that he alleges over here. It's not just the indemnification. And I'm not at all sure that these are valid complaints. But at this pleading stage, he's alleging all kinds of financial inducements that the company is giving these union officials to act in – act in that capacity. And he says they're illegal inducements. Well, what he has alleged, Your Honor, is that there were various inducements in order to establish this union, to get them in the door. I'm not even sure that that's a valid 302 claim. But that's something that was not raised or ruled upon before. But it's not once they're in the door that they're being paid off or bribed. That would be a very different – a very different case. And that might make the causal relationship easier. But what the allegation is is that there were certain payments promised or made in order to get the – to get the petition signed and to get this employee association in the door, and that somehow but for that he would have gotten his job back through the grievance process. And that simply does not follow from a logical standpoint. Certain of his other – certain of the other causation arguments are even more difficult when you look at the two kinds of RICO acts, predicate acts that are alleged and the two types of RICO damages that are alleged. I think the only other arguable argument that he can make is that somehow these unlawful payments led to the establishment of a union, and therefore it suppressed the – it suppressed his wages. That was the allegation that was added by the – by the amended complaint. And at least on first blush, that doesn't seem quite as farfetched. But there is – there's absolutely nothing that talks about how this supposedly unlawful establishment led to the suppression of his wages. And, of course, what's going on here is an attempt really to parrot the language of Mendoza. But this is a very different case from Mendoza. There, first of all, we had a class action where a very large group of employees were being represented. And there the plaintiffs provided substantial background and detail about the scope of the supposedly unlawful scheme and how it impacted the plaintiff. And there the court found that plaintiffs had stated a claim that they were the direct victims of the illegal hiring scheme. In fact, Mendoza is really a causation case. That's what Mendoza spent most of its time talking about. And put the plaintiffs to a fairly high standard of showing causation, that it wasn't too remote, that it wasn't too speculative in order to allow that class action to go forward. You know, it's not clear to me that the district court really considered these arguments in the RICO claim. They talked a lot about wire fraud and mail fraud. But I didn't really see the district court at the one place the opposing counsel said that it referred to the 186 claims. It was only where it said, well, for the same reasons with respect to the original complaint. And I look back at the rulings on the original complaint, and I can't see where. Can you tell me where they really considered whether 186 violations constituted RICO violations? Well, and it's difficult to track through because of the changing in the nomenclature of the claims and so forth. And we tried to lay that road map out in our brief, Your Honor. The wire fraud and mail fraud claims counsel conceded had not been pled with particularity and essentially has abandoned those predicate acts. So really what it comes down to is leaving the indemnification predicate act and the, what I call the unlawful establishment predicate act. Well, basically it's unlawful payments to union officials under 186. I can't see where the district court ever considered whether those were valid RICO claims. I think the district court didn't, and we didn't raise in the district court the issue of whether those are actually indictable offenses and have been pled properly. The district court did, though, consider, and we argued at length, and this was really the thrust of our argument, that those did not constitute RICO proper, the plaintiff didn't have RICO standing because those were not RICO injuries that came as a result of the predicate acts as is required by 1964C. That was the thrust of our argument, and the district court agreed with us. So the where they're considered is in wherever the court rules on whether there was an injury. That, and there's not a lot. We would readily admit there's not a lot of detail in the rulings below. There was a fairly lengthy discussion in the magistrate judge's original recommendation and order that was then adopted by the district court, but clearly one of the grounds for decision was that there was no pattern and there was no RICO standing, and the RICO standing issue subsumes that this has to be RICO injury and it has to be as a result of the predicate acts. So we believe that that issue was decided below and is properly before this court. We believe that the plaintiff's attempt to really try and shoehorn this case into Mendoza in order to save that portion of his RICO claims is unavailing, that there is no causal relationship between the predicate acts as pled and any alleged suppression of plaintiff's wages, that any attempt to make that connection is too speculative and too remote. This is not Mendoza, and you can't make that argument by virtue of vague and conclusory allegations added at the 11th hour. Therefore, we would submit that because plaintiff cannot show that the RICO injuries he's complained of were directly and proximately caused by the predicate acts as alleged, his RICO claims must fail and that therefore the district court's decision should be affirmed. Thank you. Let me try to hit a couple of important highlights that I obviously forgot on the first occasion. I'm sorry, let me try to hit a couple of highlights while I still have time. The court asked, I think, in terms of the waiver of the right to sue question, whether in fact this was a standard grievance procedure which allowed for the appeal of the arbitrator's ruling and all that. I would point the court to excerpts of record, page 72 in particular, and about 15 lines from the bottom, and that particular document on that particular page is the collective bargaining agreement of the one store from which my client was terminated, and in part it says, subject to the terms of this section, unless otherwise provided by applicable law, the arbitrator's ruling shall be binding and conclusive, shall be instead of any other action based on the occurrence involved, and shall be controlling in case of attempted relitigation in another forum. I practiced in the trenches of labor relations for nearly 20 years, and I have never seen a grievance procedure that did anything like trying to do what that did. Let me also say to you that this counsel for a defendant has spent an enormous amount of time trying to shoehorn this case into the preemption and the statute of limitations doctrines of the duty of fair representation. Everything I read and have cited to the court leads me to believe that the labor LMRDA causes are valid causes, and they go to the legitimacy of the relationship and the duties owed by a union to its members, independent of any processing of grievances in a DFR sense. The reason defendant wants to get us into the DFR claim is because of statute of limitations and preemption issues. Defendant talks about, respondent talks about the predicate acts, and the acts as if there are two. I would ask the court to remember that that portion of section 1961 of WECO talks about predicate acts or racketeering activity being indictable acts. We have alleged literally hundreds of indictable acts, not just two. He wants to group them into characterizations or lump them into bribery and indemnity, but they, in their detail, in their enactment, in their negotiation, involve hundreds of indictable acts, scores anyway. You're alleging that all kinds of payments to these union officers are WECO payments? What I am alleging is that this is a regular way of... Are they paid for time engaged in union activities? No. What I am alleging, Your Honor, is that the initiation and the negotiation, the creation of these unions, is a regular practice and way of doing business. And the methodology by which that is done involves both sides of the section 186 equilibrium. It involves committees of employees and representatives and unions. It involves representatives of management. It involves management itself. And each participation, each time a new store is opened, as we've alleged, this thing is done and this kind of a deal is put in place. And these all represent a way of doing business. And you're only complaining about the initiation of the union? I thought you were complaining about the administration of the agreements. That as well. There are a raft of WECO violations, predicate acts, on the initiation side, and there are a raft of them in the administration of the grievance processing. And the Court has not had an opportunity yet to rule as to whether any or all of those constitute WECO acts? No, Your Honor. We're, frankly, getting a pretty short trip. If I might, this is, I would ask the Court to be reluctant to buy into the notion that this is just a termination case. Certainly, I discovered what I have come to allege in the amended complaint because this gentleman came to me after he was terminated. But it does not underscore in any way, well, I mean, it should not be to underemphasize in any way the fact that we believe that the WECO acts of initiation and creation and maintenance through the grievance procedure have caused a situation where it's completely destroyed the arm's-length relationship between labor and management. And that has an impact on the two financial things that my client is alleging happened to him. And that is, one, he lost his job and the benefits that went with it. And, two, that along the way, for whatever point in time he should have been an employee of this company, his wages and benefits were suppressed. And the directness of causation, that shouldn't strike anybody as a huge leap in logic. Once you destroy the arm's-length relationship, once you use the contract bar in the NLRA to keep out other legitimate unions, what do you expect will happen to the wages and benefits? What do you expect will happen in a grievance processing sense? I imagine this Mr. Paul came because he was concerned about his loss of his jobs and his salary and benefits and all that. Have you had any discussions with the other side about solving his problem and resolving this dispute so that Mr. Paul's interests are taken care of? We have had discussions. I can reassure the Court that Mr. Paul has equal interests in seeing that that part of it is taken care of as he is in his place in what is a rather unique lawsuit and a rather unique discovery on his part. And I can assure you that we are not sacrificing one for the other. All right. It sounds, as Judge Fletcher said at the beginning of this, it starts with a fairly common, but you present a decent claim on a wrongful discharge that lies at the heart of this case. And it might be something that the parties would want to consider trying to resolve. It sounds to me like you're at the beginning of a long process of litigation that could end up costing everybody an awful lot of time and money. Well, we frankly hope we're at the beginning of a long process, Your Honor. My client has found mitigating employment. He wants to attack the scheme. We are ready to attack the scheme if this Court approves of that. All right. Well, thank you both very much. The case just argued will be submitted. The Court will take a brief recess before the last two cases this morning.
judges: Reinhardt, W. Fletcher, Bybee